NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH CHARLES, | |
| Petitioner, | Civil Action No. 3:12-cv-4160 (JAP) |
| v. | **OPINION** |
| CHARLES SHANAHAN, et al., | |
| Respondents. | |

PISANO, District Judge

  This matter is before the Court on Joseph Charles ("Petitioner")'s Amended Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241. Petitioner is detained at Monmouth County Correctional Facility and challenges his mandatory detention, alleging it is unlawful because he was not detained "when . . . released" from criminal custody under 8 U.S.C. § 1226(c). Instead, Petitioner was detained approximately ten years after he was sentenced to a conditional discharge, meaning he was never incarcerated. Respondents filed a response to the Petition, and Petitioner filed a reply. This Court heard oral argument on September 19, 2012.

  This case concerns the issue of whether the "when . . . released" clause in § 1226(c) means that an individual must be detained *immediately* after being released from custody or can be detained at some point in time *after* release from custody. For the reasons expressed below, this Court finds that "when . . . released" in § 1226(c) means detention must occur immediately after release from criminal custody. Because Petitioner was detained ten years after being sentenced to a conditional discharge and therefore, was not incarcerated for that conviction, the

1

Court will grant the Amended Petition for Habeas Corpus and order an Immigration Judge to provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).

**I.     BACKGROUND**

Petitioner, a native and citizen of Haiti, was admitted to the United Sates on March 14, 1984 as a lawful permanent resident. Declaration of Hoi Yan Law, Deportation Officer, U.S. Immigration and Customs Enforcement ("Hoi Yan Law Dec.") ¶ 4. Between 1995 and 2012, the State of New York convicted Petitioner of various offenses. *Id.* ¶¶ 5–11. At issue here is Petitioner's June 19, 2002 conviction for attempted assault in the third degree, for which Petitioner was sentenced to a conditional discharge. *Id.* ¶ 9; Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Memorandum of Law") Ex. C.

On May 10, 2012, Petitioner received a Notice to Appear, which stated that he was subject to removal pursuant to "Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct." Memorandum of Law Ex. A. The two alleged crimes involving moral turpitude, listed in the Notice to Appear, are a February 7, 1995 conviction for intent to obtain transportation without paying and the June 19, 2002 conviction for attempted assault in the third degree. *Id.* On May 11, 2012, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner. Hoi Yan Law Dec. ¶ 12. On May 15, 2012, ICE served and filed the Notice to Appear and placed Petitioner in removal proceedings. *Id.*

On May 29, 2012, Petitioner appeared before an Immigration Judge and "admitted the factual allegations in the" Notice to Appear, "conceded removability as charged, and made an

oral request for bond redetermination." *Id.* ¶ 13. The Immigration Judge determined that Petitioner was subject to mandatory detention and adjourned the proceedings until August 2, 2012, so Petitioner could file an application for relief from removal. *Id.* On June 4, 2012, Petitioner moved for a bond redetermination and filed the application for relief from removal on July 20, 2012. *Id.* ¶ 14. Meanwhile, Petitioner filed a Petition for Writ of Habeas Corpus with this Court on July 6, 2012, arguing that his mandatory detention was unconstitutional and violated the Immigration & Nationality Act. On August 2, 2012, the Immigration Judge adjourned the proceedings until October 4, 2012, in order for Petitioner to provide documentation in support of his application for relief from removal. *Id.* ¶ 15. On August 20, 2012, Petitioner filed an Amended Writ of Habeas Corpus with this Court. Petitioner is currently in custody at Monmouth County Correctional Facility. *Id.* ¶ 3.

## II.   DISCUSSION

Petitioner argues that his mandatory detention violates 8 U.S.C. § 1226(c) because he was not detained "when . . . released" from criminal custody pursuant to the statute. Petitioner explains that he was detained in May 2012 based upon his 2002 conviction for attempted assault in the third degree, for which he was never incarcerated; thus, he was not detained "when . . . released" from criminal custody. Petitioner asserts that § 1226(c) is unambiguous, but if ambiguous, *Matter of Rojas*, 23 I & N Dec. 117 (BIA 2001), which Respondents rely on for the proposition that an alien is subject to mandatory detention despite the fact that he was not detained immediately upon release from criminal custody, is unreasonable.

Respondents, however, argue that Petitioner's detention was mandated by § 1226(c). Respondents assert that under § 1226(c)(1)(B), Petitioner did not have to be sentenced to a period of incarceration to be subject to mandatory detention. Respondents explain that the plain

3

language of the statute states that the "Attorney General shall take into custody any alien who – . . . (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii)," which includes crimes involving moral turpitude.  Thus, Respondents treat the lettered paragraphs in § 1226(c) independently from the "when . . . released" clause and argue that mandatory detention does not require incarceration if based on a crime in § 1226(c)(1)(B); instead, it just requires an alien to "commit[]" the offense.  Regarding the "when . . . released" clause, Respondents contend that the statute is ambiguous and defer under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to *Rojas*, which defines "when . . . released" as the earliest time at which ICE may arrest someone who is in criminal incarceration.  Respondents also rely on a Fourth Circuit case, *Hosh v. Lucero*, 680 F.3d 375, 380 (4th Cir. 2012), which states that "when" has different meanings, and therefore, it is unlikely that "when . . . released" means "at the moment of release, *and not later*."

In his reply brief, Petitioner argues that § 1226(c) is unambiguous and requires an alien to be detained "on or about the time of release from criminal custody."  Petitioner asserts that severing § 1226(c)(1)(B) and the "when . . . released" clause does not comply with the statute's internal structure and punctuation and account for the relevance of the "when . . . released" language.  In addition, Petitioner contends that reading "when" to mean "anytime" makes "when" surplus and cites several cases from this Court that read "when . . . released" to mean that the individual should be detained immediately when released from criminal custody.  Moreover, Petitioner notes that several cases from this Court have rejected the Fourth Circuit case Respondents rely on.  Lastly, although Petitioner argues that the statute is unambiguous, if ambiguous, Petitioner contends that the Court should not defer to *Rojas* because it is

unreasonable to interpret the statute as permitting the Attorney General to disregard the "when . . . released" language.

Thus, the Court must examine the issue of whether the mandatory detention provision in 8 U.S.C. § 1226(c) applies only if the alien is detained immediately after being released from criminal custody for an offense listed in § 1226(c)(1)(A)-(D). Because Petitioner was detained almost ten years after a conviction for which he was never incarcerated, the Court will grant Petitioner's Amended Writ of Habeas Corpus.

### A. Jurisdiction

Under 28 U.S.C. § 2241(c)(3), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws . . . of the United States." This Court has subject matter jurisdiction over this case because: (1) Petitioner is in the custody of the Department of Homeland Security ("DHS") at Monmouth County Correctional Facility; and (2) he argues that his mandatory detention violates 8 U.S.C. § 1226(c).

### B. Exhaustion

Petitioner argues that his mandatory detention is unlawful because he did not commit two crimes involving moral turpitude after the expiration of the Transition Period Custody Rules ("TPCR")[1]. Additionally, Petitioner asserts that the "only available means of challenging the applicability of the mandatory detention statute" is a *Joseph* hearing, and the standard in a *Joseph* hearing is contrary to procedural due process since it places a high burden of proof on

---

[1] The TPCR was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and expired on October 8, 1998. *See Rojas*, 23 I & N Dec. at 119.

5

Petitioner. *In re Joseph*, 22 I & N Dec. 799, 805 (BIA 1999).[2] Respondents contend that Petitioner cannot challenge his deportability or mandatory detention based on the grounds outlined in the Notice to Appear because not only did he concede deportability on these grounds, but he did not exhaust his administrative remedies. Respondents assert that Petitioner should have argued that his 2002 conviction is not a crime involving moral turpitude before an Immigration Judge at a *Joseph* hearing, which would have given him "the opportunity to offer evidence and legal authority on the question whether the Service has properly included him within a category that is subject to mandatory detention." *Id.* at 805. If Petitioner lost at the *Joseph* hearing, then he could appeal to the Board of Immigration Appeals ("BIA"). Petitioner responds that he does not have to exhaust his administrative remedies because since there is no legal justification for holding him in mandatory detention, this Court should exercise its jurisdiction.

Although § 2241 does not contain an exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998). The Third Circuit requires exhaustion for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761–62 (3d Cir. 1996). However, "exhaustion is not required when the petitioner demonstrates that it is futile." *Gambino*, 134 F.3d at 171.

---

[2] The standard for a *Joseph* hearing is: "a lawful permanent resident will not be considered properly included in a mandatory detention category only when an Immigration Judge is convinced that the Service is substantially unlikely to establish, at the merits hearing, the charge or charges that subject the alien to mandatory detention." *Id.* at 800.

Here, exhaustion would be futile because in *Rojas*, the BIA interpreted § 1226(c) as requiring detention in a case like Petitioner's. Therefore, it would be futile for Petitioner to exhaust his remedies and argue that *Rojas* is incorrect to the agency that issued the decision.

### C. Petitioner Is Not Subject to Mandatory Detention Under § 1226(c)

#### a. Statute & Framework

The mandatory detention statute, 8 U.S.C. § 1226(c), provides: "[t]he Attorney General shall take into custody any alien who –

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C) or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

Because this case turns on whether "when . . . released" requires an alien to be detained immediately after his release from criminal custody and the BIA has already addressed this issue in *Rojas*, this Court will review the BIA's construction of the statute using the framework outlined in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*

In deciding if an agency's construction of a statute is appropriate, a court must conduct a two-part inquiry. *See Chevron*, 467 U.S. at 842. First, the court must examine "whether Congress has directly spoken to the precise question at issue." *Id.* If "the intent of Congress is

7

clear, that is the end of the matter," and "court[s], as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. The "judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n. 9. If "a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* However, if "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. A court determines whether a statute is ambiguous by "look[ing] at both the most natural reading of the language and the consistency of the 'interpretive clues' Congress provided." *Saysana v. Gillen*, 590 F.3d 7, 13 (1st Cir. 2009).

Thus, this Court must determine whether Congress has "directly spoken" to the meaning of the "when . . . released" clause.

### b. Congress Clearly Intended That an Alien be Detained Immediately After Release From Criminal Custody Under § 1226(c).

This Court, on several occasions, has recognized that Congress clearly intended that an alien be detained immediately after being released from criminal custody to be subject to mandatory detention under § 1226(c). *See Christie v. Elwood*, 2012 WL 266454, *9 (D.N.J. Jan. 30, 2012) (holding "[t]his Court joins the overwhelming majority of courts and finds that 'Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from the removable offense enumerated in § 1226(c)'"); *Parfait v. Holder*, 2011 WL 4829391, *9 (D.N.J. Oct. 11, 2011) (same); *Beckford v. Aviles*, 2011

WL 3515933, *9 (D.N.J. Aug. 9, 2011) (same); *see also Nimako v. Shanahan*, 2012 WL 4121102, *8 (D.N.J. Sept. 18, 2012) (holding that "Nimako is not subject to the mandatory detention exception in § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration for a specified offense"); *Cox v. Elwood*, 2012 WL 3757171, *4 (D.N.J. Aug. 28, 2012) (finding "'when . . . released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation"); *Dimanche v. Tay-Taylor*, 2012 WL 3278922, *2 (D.N.J. Aug. 9, 2012) (granting petition for writ of habeas corpus "where Petitioner is being detained by DHS five years after his release"); *Munoz v. Tay-Taylor*, 2012 WL 3229153, *3 (D.N.J. Aug. 6, 2012) (finding that "'when . . . released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation" in *Rojas*); *Kot v. Elwood*, 2012 WL 1565438, *8 (D.N.J. May 2, 2012) (holding "Kot is not subject to the mandatory detention exception in § 1226(c) because DHS did not take Kot into custody when he was released from criminal incarceration for a specified offense in 1999, but allowed him to live in the community years before taking him into custody in August 2011"); *Nunez v. Elwood*, 2012 WL 1183701, *3 (D.N.J. Apr. 9, 2012) (finding that "'when . . . released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation").

Moreover, in a factually similar case — *Sylvain v. Holder*, 2011 WL 2580506 (D.N.J. Jun. 28, 2011) — this Court found that § 1226(c) was unambiguous. In *Sylvain*, Petitioner filed a Petition for Writ of Habeas Corpus, challenging his mandatory detention under § 1226(c). *Id.* at *1. Petitioner was convicted of various offenses over the years, and on October 4, 2007, "he was convicted of criminal possession of a controlled dangerous substance and sentenced to a conditional discharge." *Id.* On April 12, 2011, DHS took Petitioner into custody. *Id.* Petitioner argued that he is not subject to mandatory detention and his detention should instead be covered

9

by § 1226(a) because "he was not taken into DHS custody when he was released last from criminal incarceration." *Id.* Respondents, however, urged the Court to defer to *Rojas*. *Id.* This Court noted that "[m]ost District Courts considering the issue have rejected the BIA's interpretation of § 1226(c)(1) in *Matter of Rojas*." *Id.* at *6. The Court rejected the argument that "'when' means 'after,'" and held that "Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from one of the offenses enumerated in § 1226(c)." *Id.* at *7. Consequently, this Court granted Petitioner's Writ of Habeas Corpus and directed an Immigration Judge to "provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2) . . . ." *Id.*

This Court agrees with its previous holding in *Sylvain* and holds that the plain language of § 1226(c) unambiguously requires an alien to be detained immediately when released from criminal custody to be subject to mandatory detention. The plain language of the statute provides that "[t]he Attorney General shall take into custody any alien . . . when the alien is released . . . ." 8 U.S.C. § 1226(c). As this Court stated previously, this language indicates that "Congress clearly intended to give the Attorney General the authority of mandatory detention . . . only if the government takes the alien into custody *immediately* when the alien is released from custody resulting from one of the offenses enumerated in" the statute. *See*, *e.g.*, *Sylvain*, 2011 WL 2580506, at *7 (emphasis added). Thus, "when" means "immediately"; it does not mean "after." *Id.*

Consequently, Petitioner is not subject to mandatory detention under § 1226(c) because: (1) he was not detained immediately after being released from criminal custody; and (2) he was never released from criminal custody. Petitioner's detention was not immediate and thus, he is

10

not subject to mandatory detention, because ICE detained him nearly ten years after he was sentenced to a conditional discharge. Moreover, mandatory detention does not apply to Petitioner because he was never "released" from criminal custody. The statutory phrase "[t]he Attorney General shall take into custody any alien . . . when the alien is released" requires a petitioner to have been in criminal custody in the first place in order to be subject to mandatory detention. However, Petitioner was never incarcerated due to his 2002 conviction for attempted assault; instead, he was sentenced to a conditional discharge. Therefore, Petitioner was not "released" from criminal custody, meaning he is not subject to mandatory detention under § 1226(c).

### c. *Rojas* and *Hosh* Are Contrary to Congressional Intent.

Respondents' reliance on *Rojas* and the Fourth Circuit opinion, *Hosh v. Lucero*, is improper because in those cases, the BIA's "administrative constructions" of § 1226(c) "are contrary to clear Congressional intent." *Chevron*, 467 U.S. at 843 n.9.

In *Matter of Rojas*, Rojas, a lawful permanent resident from the Dominican Republic, was convicted of possession of a controlled substance and sentenced to 2.5 to 5 years in prison. *Matter of Rojas*, 23 I & N Dec. at 117–18. The Immigration and Naturalization Service ("INS") initiated removal proceedings by issuing a Notice to Appear, which said that Rojas was subject to removal due to § 1226(c)(1)(B). *Id.* at 118. He was released from criminal custody and on the second day of his release, was taken into custody by INS. *Id.* Rojas argued that he was not subject to mandatory detention because he was not taken into custody "when . . . released." *Id.* The Immigration Judge held that Rojas was subject to mandatory detention. *Id.* The BIA agreed, finding that Rojas was "subject to mandatory detention . . . despite the fact that he was not taken into Service custody immediately upon his release from state custody." *Id.* at 127. The

11

BIA declared that § 1226(c) was ambiguous and explained that the "when . . . released" language is different than the description of the alien in the lettered paragraphs of the statute. *Id.* at 120–21. In addition, the BIA noted that "other statutory provisions pertaining to the removal process place no importance on the timing of an alien's being taken into custody by the Service." *Id.* at 121. Moreover, the BIA cited *Matter of Noble*, 21 I&N Dec. 672 (BIA 1997), because there, it read a predecessor to the "when . . . released" clause "as a direction pertaining to when the duty arises to take the alien into custody." *Id.* at 126. As demonstrated above, however, the BIA's interpretation of § 1226(c) is contrary to the unambiguously expressed intent of Congress.

In *Hosh*, the Fourth Circuit deferred to the BIA's interpretation in *Rojas* because "although § 1226(c) may arguably be susceptible to more than one interpretation, the BIA's interpretation of the statute . . . is a permissible, and more plausible, construction." *Hosh*, 680 F.3d at 378. The Fourth Circuit found that § 1226(c) is ambiguous, and the word "when" in the statute "can be read, on one hand, to refer to 'action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun'" or "[o]n the other hand, 'when' can be read to mean the temporally broader 'at or during the time that,' 'while,' or 'at any or every time that . . . .'" *Id.* at 379–80. Thus, the Fourth Circuit concluded that it is "unlikely that 'when . . . released' means 'at the moment of release, *and not later*'" and held that the alien "is not exempt from mandatory detention." *Id.* at 377, 380.

However, no "District Court (outside the Fourth Circuit) post *Hosh* has been persuaded to follow the Fourth Circuit's analysis in Hosh." *Nimako*, 2012 WL 4121102, at \*6. This Court does not follow *Hosh* for several reasons. First, as a Fourth Circuit opinion, *Hosh* is not binding on this Court. *See Martial v. Elwood*, 2012 WL 3532324, \*3 (D.N.J. Aug. 14, 2012); *Munoz*, 2012 WL 3229153, at \*3. In addition, *Hosh* is not persuasive because the Fourth Circuit's

12

analysis and holding are completely opposite of this Court's analysis on the issue. *See Nimako*, 2012 WL 4121102, at *7. "Absent a directive from the Third Circuit, th[is] Court respectfully declines to adopt the *Hosh* holding and will instead follow the reasoning utilized by the First Circuit in" *Saysana v. Gillen*. *Id.* at *8; *see also Munoz*, 2012 WL 3229153, at *4; *Gonzalez-Ramirez v. Napolitano*, 2012 WL 3133873, at *5 n. 8 (D.N.J. Jan. 30, 2012). In *Saysana*, the First Circuit, like this Court, found that § 1226(c) is unambiguous. *Saysana*, 590 F.3d at 13. Moreover, the First Circuit and this Court agree that § 1226(c) requires detention immediately after release from criminal incarceration because the statute "clearly envision[s] a continuous chain of custody of dangerous aliens." *Nimako*, 2012 WL 4121102, at *7; *see also Saysana*, 590 F.3d at 16 (stating the "Court is not persuaded that the legislature was seeking to justify mandatory immigration custody many months or even years after an alien had been released from state custody"). Similarly, the Third Circuit recognized that the statute requires a continuous chain of custody for criminal aliens when it said that § 1226(c) "ensur[es] that aliens convicted of certain crimes would be present at their removal proceedings and not on the loose in their communities, where they might pose a danger." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231–32 (3d Cir. 2011). Lastly, the Fourth Circuit did not apply the dictionary definitions of "when" to § 1226(c) and thus, the definitions do not make sense in the context of the statute. *See Nimako*, 2012 WL 4121102, at *8. For example, "neither BIA nor the Fourth Circuit explains how the words 'The Attorney General shall take into custody any alien . . . when the alien is released' can be read to state that 'The Attorney General shall take into custody any alien . . . any time after the alien is released.'" *Id.*

Additionally, Respondents' argument that mandatory detention does not require a period of incarceration if based on § 1226(c)(1)(B) is contrary to the plain language of the statute.

13

Respondents treat the lettered paragraphs in § 1226(c) independently from the "when . . . released" clause, meaning if Petitioner is subject to removal under § 1226(c)(1)(B) "by reason of having committed any offense in section 1227(a)(2)(A)(ii)," including crimes involving moral turpitude, then he does not have to be released from criminal incarceration to be detained — he just needs to have "committed" the offense. Yet, mandatory detention in § 1226(c) requires an alien to be released from criminal custody because the "when . . . released" clause is related to the "prior language in the subsection," including the lettered paragraphs in § 1226(c)(1)(A)-(D). *See Beckford v. Aviles*, 2011 WL 3515933, at *9. Moreover, the "when . . . released" clause "explains the later use of the terms related to criminal detention [parole, probation, supervised release] and the use of the term 'same offense' at the end of subsection (c)(1)." *Id.* Thus, "when . . . released" is an integral part of the statute, meaning it is inappropriate to separate the statute into clauses and argue that an alien can be detained for "committing any offense in section 1227(a)(2)(A)(ii)" without being criminally incarcerated. As a result, because Petitioner was never incarcerated for his 2002 conviction, he was never released and therefore, cannot be subject to a mandatory detention.

Because Petitioner was never incarcerated for his 2002 conviction for attempted assault and thus, could not be released from criminal custody and because Petitioner was not detained until almost ten years after his 2002 conviction, he is not subject to mandatory detention under § 1226(c)(1). Instead, Petitioner's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond.

Therefore, this Court grants the Amended Petition for Writ of Habeas Corpus and directs an Immigration Judge to provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a), within 10 days of the September 20, 2012 Order.

### III. CONCLUSION

For the reasons set forth above, the Court grants Petitioner's Amended Writ of Habeas Corpus and directs that an Immigration Judge provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).


        /s/ Joel A. Pisano
        JOEL A. PISANO
        United States District Judge

Date: October 9, 2012